I represent Travis Metzger in this case. This is a probation revocation. This whole case started when Travis supposedly failed a drug test, but ultimately we find out he did not in fact fail. So that's sort of the impetus that started the filing of these petitions to revoke his probation. The conditions of the original probation order were that he was required to meet with the probation department as directed. He was to complete counseling as directed and provide written confirmation of completion of that counseling. He was to seek to be gainfully employed, abstain from alcohol or drug use, and do not commit any criminal offenses. On April 28th of 2010, a petition to revoke was filed alleging three violations. The first allegation was a failure to provide proof of counseling. The second was a failure to report to an appearing person at the probation office on April 9th, April 16th, and April 20th. So a week to two weeks prior to this petition being filed. And the third was for testing positive for THC cannabis on February 26th. That's the test that actually said he did not test positive for it. And ultimately that allegation was withdrawn. On May 3rd, an amended petition was filed alleging that he committed domestic battery against his girlfriend, Carrie Baldwin. The judge found at the end of the hearing that the state approved by preponderance of the evidence that he had in fact committed domestic battery, that he had failed to appear for his appointments, and that he had failed to get counseling. The court noted at that time that it didn't matter, that it turned out there was never a reason for him to have drug counseling because he hadn't actually committed that offense. But since that allegation was withdrawn, it ended up not being an issue. Each of these findings is based on very weak evidence, and it was error for the trial court to find the state and then its burden. Each of its findings were against the manifest weight of the evidence. I'm going to start with the failure to get counseling. It's important to note that what he was ordered to do was to get the counseling and provide written confirmation that he had completed it when that was demanded. The probation officer, Parks, directed Travis to set up this counseling by March 26th and then provide written confirmation of it. Now, this is not what he was ordered to do by the trial court. This is what the probation officer told him to do. And he told him to complete it by September 26th. And then, assuming he would, at that time, he would demand written confirmation that he had done that as well. At the hearing, Travis admitted that he had not yet done the counseling. There were several reasons for that, one being that he'd been in custody since May 1st. It's kind of hard to go to counseling when you're in jail. But more importantly, the revocation hearing was held on June 30th of 2010. The deadline to complete his counseling wasn't until September 26th. So any finding that he had violated in order to get counseling is way premature three months before the deadline for which he was supposed to have done it. So for that reason, it's completely against the manifest way of the evidence for the court to have found that the state had carried their burden on that. The second allegation violation was that he had failed to report to probation on April 9th, April 16th, and April 20th. But this is kind of an interesting situation here. Apparently, the way appointments were scheduled in this case was a card was mailed to defendant at his sister's home where he stayed. There was some dispute about whether all these cards were received, although there was no allegation of violation filed based on some earlier screw-ups in appointments. Like there was a March 11th appointment that was supposed to be a home visit that the probation officer failed to keep. There was another problem with a March 22nd appointment that the probation officer testified both the appointment had been made and also had not been made. So we don't really know what that was about. There's no allegations of violation filed on those things. But the first talk, the probation officer did mention that one of the cards that he had mailed to that address telling the defendant of an appointment had been returned to his office. So there was some evidence for the idea that the appointment cards were not being received. We do know... Was it the defendant's obligation to, was it his obligation to And he did. And this was an accurate address. It was an accurate address. It was an accurate address because he was staying with his sister. The first one that we know became a problem was the appointment card sent about the April 9th appointment. We don't know when it was sent. There was never any testimony about when that card was sent out. An important point I want to make before I get too deeply into these dates is that what is an appointment? An appointment is a meeting of the minds, an agreement that this is when it's going to happen. It's not a demand, a summons. You do this or else. An appointment requires a little bit more than that. If he is also required to seek gainful employment and he had it, he was working during this time period that all of this is going on. He's working out of town with an employer, staying in a hotel at the mercy of his employer to drive him out of town and to bring him back. So he's not just blowing off these things at all. He's just doing another requirement of his probation, which is holding down a job. The April 9th- Let me just, for clarification, was he staying out of town for the job overnight? During this time period, yes. The testimony said he was staying in a hotel and he had transmission problems with his car. So I guess the boss drove him out of town and then he was toted around or something. That's the way it sounded to me. I don't remember specifically what his job was, but I'm remembering something about construction, something like that. But he was legitimately absent from the area at that time. And so he's dependent on his sister to get the mail, which is at her address. I gather it was post office box. When she received the appointment card about April 9th, that date had already passed. But she notified him immediately, you got this card, it's too late. And he contacted his probation officer about that at that time. It's after this that things go a little bit strange. There was supposedly an appointment card sent, and we don't know when it was sent, but I'm going to presume it was after April 9th, to schedule an appointment for April 16th. Whether when that was received, whether it was received, I don't know. This is still at the same time that the defendant is working out of town. He doesn't make that appointment. So another appointment card is sent for April 20th. He doesn't make that appointment. Well, think about how the U.S. Post Office works. If you don't show up for something on April 16th, they're going to send you a, you screwed up, you need to be here on April 20th card. When do you think it arrived? Maybe April 20th, maybe April 25th, who knows? But this kind of ties into the idea that sending a summons in the mail, a card, saying you have an appointment, is not really an appointment. It's not as if they spoke on the phone and agreed that one o'clock next Thursday is when you're going to be here. Will you be here at that time? Yes, that's a good appointment for me, I'll see you then. That never happened. There's no meeting of the minds, there's no evidence that they ever agreed to an appointment at all. Did the defendant testify about these cards and when they were received? The only one that there was specific testimony about was the April 9th and it being received late because the sister picked up the mail late. Was that his sister's testimony or was that the defendant's? The sister didn't testify. Okay, so it would be the defendant's? Yes. So he didn't say anything about when he got notice of the appointments on the 16th or the 20th? There was no discussion of notice ever being received about those at all other than the probation officer saying, I mailed the cards. He didn't say when he mailed them, didn't say anything about that. We didn't get into any detail work about that. The logistics of whether he could have received them at a time to make an appointment, you know, they're not even feasible, they're not possible. You can't send out something on the 16th demanding appearance on the 20th and be sure that, you know, it's been received, arrangements can be made. Are we to presume from a silent record that he didn't get it on time? I don't think you can presume that. I think that you can, I think it's more important to determine whether or not sending a card in the mail whenever you send it is an appointment such that it can be broken or blown off by the defendant, which is what the trial court found, that he just didn't show for appointments. And our argument is that they weren't appointments. Even if the cards were mailed, even if he did receive them, that's not necessarily an appointment. We do know that as soon as he found out that he had missed something, he contacted his probation officer, asked for some time, told him he was out of town, and give him a few more days to get back, he gets back in town on the 20th day of his supposed missed appointment, and he's there on the 21st, and he is there to see his probation officer. That suggests that he's not running from his probation officer. Otherwise, he'd run a little harder, and it certainly wouldn't have called him as soon as he got back to town. It just cuts against the idea that he's completely ignoring these so-called appointment summons cards that may or may not have ever been received. It's not as if the trial court did focus on, it's your job to keep the probation officer apprised of where you are and your up-to-date address. He had done all that. And it's not that he had not given him a current address. That wasn't the case at all. He's just on the road working, which he was also required to do. So we don't really have specific, we don't have enough specific information about agreements being made in order to find that there was an appointment that was not cut. So for the judge to have found that he willingly did that, it's just not supported by the evidence. So that is another violation that the state did not carry the burden on. The third violation that the trial court found, and this is the one it focused on more than the others, interestingly, was that he committed domestic battery against Carrie Baldwin. This is a fascinating situation. What we know about this case is that Carrie Baldwin, who is defendant's, I guess, on-again, off-again girlfriend, apparently has a serious drinking problem because she can't tell you what went on the night before the police get involved in the situation. We've read the brief. We would ask that you advise the trial court area to revoke his probation. Thank you, counsel. Counsel? Your Honor, I'm Rebecca Kromick. I'm arguing in place of Neha Sharma who briefed the matter for the state of Illinois. I have to admit, I'm just appalled. This is not the state courting the defendant who tried to come to an agreement and a meeting of the minds about an appointment. This is a matter of grace. This defendant is on probation. And if you look at the probation order NRC 46, you'll see that number two says, and this is not a let's meet our minds, this is defendant shall report to the Fayette County Probation Department on this date and hereafter at the times and in the manner directed by the department, both in person and in writing. They're not having to make an agreement with the defendant about when he can come. They are, he is required by consent, by agreeing to a term of probation, by agreeing to this sentence and not challenging it, that he will report. This is a condition of probation. And the sending out of cards or however the department notifies him, uh, he, he, he has, he agrees to come at that point in time. This is, this is a condition of his probation. So this whole idea about there having to be some sort of agreement between the probation department and the defendant about when appointments will be set is not accurate. He does have to know about it. He does have to know it. And the court in its, in its order found that notice had been sent. And it is also a matter of record that on February 26th, when he was in the office and, and there was a field test that showed positive for cannabis and, and, and this field test then was sent off and later the lab found no cannabis. But at this point in time, the field test showed cannabis on 2-26. And at that point in time, they orally agreed upon the next meeting. And that would be March 22nd. And so he, he had, we know, we know of record that he had one notice and we do know that the, the, that he had supplied the correct address and that notices were sent. And you can't presume that he didn't give them. I'm sorry. I'm a little confused. And what he was charged with not showing was April 9th. It was March 22nd, one that he missed? That's one of them. Oh, okay. So, so, and he got notice of that one at the probation office? Because he was there at the time when he agreed to the, to the next meeting. He agreed to that. He was notified. I mean, he didn't have to agree to it. Let's just say he was notified in person at the, about the March 22nd meeting on February 26th. And he didn't show up for the March 22nd meeting? No, he did not. I'm sorry. I was under the impression only these April ones were at issue, but okay. No, no. The March, later on in the testimony, Parks corrected himself. At first he, he said that that wasn't so, and then he referred to his notes and said, yes, in fact, there was a meeting scheduled for the 22nd of March and the defendant did not show up. And that, that, that meeting had been scheduled on February 26th when the defendant was in the office and had tested positive for, in a field test for cannabis. So the court found that notices were sent to the correct address. The defendant had, he didn't claim he didn't get the notices in the mail. He did, he just claimed that his sister was on vacation and she picked him up two days late. And, and so he didn't get notice in time or he, or he was out of town or he had car trouble. These are excuses. They're not, they, and, and it, and it doesn't, it doesn't provide a legal excuse to not appearing or not notifying the probation officer or keeping in touch with the probation officer about these, these appointments. Now, also in the probation under, order under 10C, the defendant is required to complete additional evaluations and counseling as may be required by the department. After this positive field test, the, the parts required and the defendant agreed to get substance abuse counseling. And he was to provide a written confirmation that he had obtained counseling and had begun it by March 26th. And he did not do that. So, and, and can I ask you one question here? Yeah. You talked about, there was domestic battery charge. Yes. Was, was he found guilty or is that just a charge and never, nothing ever happened to that? Is there a conviction? That I'm not, I'm, that's outside of the record as far as I know. I don't know. Because usually they're on standard is that you're not violating laws in the state of Illinois and that would be one. Yes. But, but if there's no conviction, you didn't violate the, I wouldn't guess. Correct. So we got to know if he was convicted. Is that in the record? Your Honor, I didn't have an opportunity to read the record and I am, I do apologize for that. And I, and as far as, you know, I do not know. Well, we'll figure it out. But it was, and if it was predicated on that and there was no conviction, I agree that that can't be a ground. But he did in fact, he did not in fact, that he admitted in his testimony that he did not pursue even beginning to arrange for substance abuse counseling. So that's clearly a violation of what, of his probation order. Kate, maybe I missed something here. Yeah. My understanding from counsel's recitation of what was in the order was that he was required to complete counseling and it, there wasn't anything actually in the order that said he had to report commencing. The, the, the order says complete additional evaluations and counseling as may be required, but, and as may be required, but he didn't, he didn't even begin to try. His time wasn't up yet though. I mean, that's kind of a problem, isn't it? That's true. But he, he was to, he did not, he did not comply with the directive that he should show by March 26th that he had begun it. And, and, but is there in the order that says he has to do that, that he has to report to the probation when he starts? Other than it simply being a requirement of the, of the, the parks, the probation officer. I mean, is there a provision in his, in his probation order that says, and comply with all reasonable requests of the probation officer or any catch-all like that that would cover that? You see what I'm getting at? I do, I do. No. I mean, he can only be revoked for somehow violating his probation order. It has to be specific enough for him to know what it is he's violating. If, if the domestic battery fails, if there was no subsequent conviction, and if, in fact, this court should find that he has to show completion during the, that that is the order, and that not merely showing compliance with beginning it is not sufficient, there still remains one ground that this court can affirm the court below on, and that is the fact that he did not show up for the appointments, and we know clearly that he knew about one in time to show up for it because it, it happened on February 26th, and it was scheduled for March 22nd. So, for any of those reasons, for the, for that reason alone, this court can affirm the order revoking probation, and that people ask for it to do so. Is there any questions? Counsel? Yes. Counsel, counsel, could you answer that question? Was there a conviction on domestic battery? It's not part of the record. Okay. I'm fairly confident that it was never pursued any further, but I, it's not part of the record. Okay. Now I have a question. Was March 27th, was the March 22nd appointment alleged in the petition to revoke probation? That was going to be my first point. Okay. No, that was not part of the allegations. Okay. It is also quite possible there's some confusion about March 11th being a home visit or March 22nd being a range time. It's not 100% clear, but perhaps those are the same thing. If you look at the probation officer's testimony, there's a, the impression I get is there's a lot of referencing of records that were not terribly complete because he would correct himself quite a lot during his testimony. So, and when you look at some of the other information about their relationship and what went on there, it's certainly worth looking at to see if that has been shown that it's quite possible that the March 22nd date is the home visit that the probation officer said he blew because he couldn't find his house and he didn't come. But my suspicion is that's why it wasn't alleged as a violation. Well, that's going to be my, I mean, it has to be alleged in the petition. I mean, he has to have noticed it when he was accused of it. Correct. Another point that I wanted to make is the time period that we're talking about, April 9th to April 22nd, we're talking about 13 days here, 13 days. This is not a long period of time where perhaps he was out of contact with his probation officer for six or eight months. We're talking about 13 days that he has shown he was working out of town. He made phone calls, even the probation officer admits that he did speak with him and immediately came in when he got back to town. That certainly is not out of touch as it's kind of being presented. And I want to get back a little bit to the appointments and he should report as directed. Is it okay for a probation officer to send something in the card and say, I'm going to need you here at 3 a.m. on Sunday morning, Christmas morning, and defendant doesn't come? Is that some sort of, is that how far we're going to stretch this, that a probation officer can make any sort of demand without any sort of input about something as important as an appointment when there are conflicting factors like he's holding down a job that he's also ordered to do? Have they spoken to each other? He could have said, I'm out of town for two weeks. I have no transportation. Can I come as soon as I get back? That would have been an appointment. And in fact, that's what happened when he found out he had missed something. So the pattern of behavior here does not show a defendant who is completely ignoring his probation officer and willfully not complying with anything. That's not what's being shown. They have to prove a willful violation and all the facts combined should be considered. Exactly. There's just too many little quirks here for the judge to have found that he had willfully violated all of these provisions when the record just doesn't show it. There's just too many holes in it. Certainly to revoke his probation, send him to prison for four years, when he was pretty much in compliance with everything he was told to do, hold down a job, get counseling. Okay, you hadn't gotten it yet, but he had six months to get it. And even at the time of the hearing, he still had three months more to go get his counseling. I mean, there were a lot of things in play here that are just, they're just hinky. There's just not enough there to support the trial court's finding that he made all of these violations. So I'd ask you to vacate that trial court's order revoking his probation. Thank you.